UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARITA S., | ) Case No. ED CV 19-906-SP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND |
| | ) ORDER |
| ANDREW M. SAUL, Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

**I.**

**<u>INTRODUCTION</u>**

On May 14, 2019, plaintiff Margarita S. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").

Plaintiff presents what amount to three issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of an examining physician in his residual functional capacity ("RFC") determination;

1

(2) whether the ALJ properly discounted plaintiff's subjective symptom testimony; and (3) whether the ALJ properly considered lay witness testimony. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 6-17; *see* Defendant's Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-13.

Having carefully studied the parties' papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinion of the examining physician in his RFC determination, properly discounted plaintiff's subjective testimony, and properly considered the lay witness testimony. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was 61 years old on her alleged disability onset date. AR at 64. She graduated from high school in Mexico, and has past relevant work as a cleaner and children's attendant. *Id.* at 34, 59.

On December 17, 2014, plaintiff filed applications for disability, DIB, and SSI. *Id.* at 64, 80. Plaintiff alleged disability primarily due to complaints of depression, diabetes, high blood pressure, carpal tunnel, arthritis in knees and fingers, anxiety, paranoia, and high cholesterol. *Id.* at 64-65, 80-81. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which she filed a request for a hearing. *Id.* at 172-76, 177-81.

On March 12, 2018, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 32-41, 44-57. The ALJ also heard testimony from Jeff Beeman, a vocational expert. *Id.* at 57-62. On April 26, 2018, the ALJ denied plaintiff's claim for benefits. *Id.* at 10-19.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity

since August 18, 2013, the alleged onset date. *Id.* at 13.

At step two, the ALJ found plaintiff suffered from the following severe impairments: affective disorder, personality disorder, and diabetes with neuropathy and mild non-proliferative retinopathy. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 13-14.

The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff had the RFC to perform light work, except that she is limited to: frequently balancing; no climbing of ropes, ladders, or scaffolds; no exposure to hazardous heights or moving machinery parts; frequent use of foot controls with right lower extremity; simple and routine instructions; occasional contact with the public; occasional changes in workplace setting; being off-task 5% of the workday; and being absent one day per month. *Id.* at 15.

The ALJ found, at step four, that plaintiff could perform her past relevant work as a cleaner and children attendant. *Id.* at 18. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined in the Social Security Act. *Id.* at 19.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Id.* The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 ((9th Cir. 1992)).

## IV.

## **DISCUSSION**

### A. The ALJ Properly Considered Examining Physician Belen's Opinion

Plaintiff argues the ALJ erred by rejecting the opinion of her examining physician Dr. Nenita Belen as to plaintiff's moderate mental limitations. P. Mem. at 6-10. Specifically, plaintiff argues the ALJ ignored Dr. Belen's opinion regarding plaintiff's moderate mental limitations when formulating plaintiff's RFC determination despite giving Dr. Belen's opinion great weight. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. *See* 20 C.F.R. § 404.1545(a)(1).[2] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by

---

[2] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. The Medical Opinions and Records

#### a. Examining Physician Dr. Nenita Belen

In May 2015, Dr. Nenita Belen, a consultative examiner, conducted a complete psychiatric evaluation of plaintiff. *See* AR at 472-76. Dr. Belen evaluated plaintiff's medical history, reviewed her medical records, and conducted plaintiff's mental status examination. *Id.* On examination, Dr. Belen observed that plaintiff was "well kept, well nourished, and in no apparent distress." *Id.* at 474. Dr. Belen also noted that plaintiff's speech was fluent and coherent, but "full of sad case scenarios," and she described her mood as "depressed, tearful, anxious, irritable, and angry with lots of regrets." *Id.* Dr. Belen diagnosed plaintiff with recurrent severe major depression and post traumatic stress disorder (PTSD). *Id.* at 475. Plaintiff was also assigned a Global Assessment Functioning (GAF) score of 55. *Id.*

Based on Dr. Belen's examination of plaintiff, she opined that plaintiff would have mild limitations performing simple and repetitive tasks as well as performing detailed and complex tasks. *Id.* Dr. Belen also opined that plaintiff would have moderate limitations in: performing work activities on a consistent basis without special or additional supervision; completing a normal workday or work week due to her mental condition; accepting instructions from supervisors and interacting with coworkers and the public; and handling the usual stresses,

changes, and demands of gainful employment. *Id.*

Dr. Belen stated that plaintiff was "responding poorly" to her current treatment by her family doctor, who prescribed plaintiff with Prozac. Id. at 473, 475. Dr. Belen recommended that plaintiff be seen by a psychiatrist, increase her antidepressant treatment, and receive counseling on a one-on-one basis more frequently than twice a month. *Id.* at 475. Dr. Belen also indicated that plaintiff's prognosis was good if provided with adequate treatment. *Id.*

### b. **Other Opinions Regarding Plaintiff's Mental RFC**

Dr. Marvin Lee, a psychiatrist, treated plaintiff for her depression, anxiety, and PTSD. *See id.* at 738-39, 750, 753, 757, 781, 799, 809. On October 10, 2017, Dr. Lee provided a medical opinion regarding plaintiff's ability to do work-related activities, in which he described plaintiff as unable to meet competitive standards in the following areas of mental functioning: completing a normal workday or workweek; maintaining attention for two-hour segments and regular attendance; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers; responding appropriately to changes in routine work settings; and dealing with normal work stress. *Id.* at 223-24.

On July 8, 2015 and January 4, 2016, the State Agency Psychologists, Dr. Jay S. Flocks and Dr. D. Funkestein, assessed plaintiff's mental RFC and found that plaintiff was moderately limited in the following functional abilities: understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without

an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and responding appropriately to changes in the work setting. *Id.* at 75-76, 145-46. Additionally, both Dr. Flocks and Dr. Funkenstein found that plaintiff could perform simple, repetitive tasks with limited public contact. *Id.*

### 2. **The ALJ's Findings**

In determining plaintiff's RFC, the ALJ found plaintiff had the following mental limitations: simple and routine instructions; occasional contact with the public; occasional changes in the workplace setting; being off-task 5% of the workday; and being absent one day per month. *Id.* at 15.

In reaching his mental RFC determination, the ALJ gave great weight to Dr. Belen's opinion that plaintiff had various mild to moderate mental limitations, except that the ALJ gave her opinion that plaintiff had PTSD less weight on the ground that it was inconsistent with the treatment notes. *Id.* at 16-17. In addition, the ALJ gave little weight to Dr. Lee's opinion regarding plaintiff's mental functioning limitations on the grounds that his opinion that plaintiff was unable to meet competitive standards was inconsistent with plaintiff's treatment notes and contradicted by Dr. Belen's expert examination and opinion. *Id.* Further, the ALJ assigned limited weight to the opinions of Dr. Flocks and Dr. Funkenstein, because they were provided by non-examining sources who did not access the developed record at the hearing level, but the ALJ nonetheless found their opinions consistent with the overall record. *Id.* at 17-18.

Plaintiff only challenges the ALJ's consideration and alleged rejection of Dr. Belen's opinion regarding plaintiff's moderate mental limitations in reaching

plaintiff's RFC. *See* P. Mem. at 6-10.

### 3. The ALJ Properly Considered the Moderate Limitations Identified by Dr. Belen in Formulating Plaintiff's RFC

Plaintiff argues the ALJ improperly excluded Dr. Belen's opinion that plaintiff would have moderate limitations in performing work activities on a consistent basis without special or additional supervision, completing a normal workday or work week, and handling the usual stresses, changes, and demands of gainful employment in formulating plaintiff's RFC. *See* P. Mem. at 6. The ALJ specifically discussed and acknowledged the moderate mental limitations identified by Dr. Belen, and stated he ultimately gave her opinion "great weight" (AR at 14, 16-17), but plaintiff contends the ALJ's RFC determination does not reflect these limitations. The court disagrees.

The ALJ adequately accounted for these moderate mental limitations in formulating plaintiff's RFC by limiting plaintiff to "simple and routine instructions, occasional contact with the public, occasional changes in the workplace setting, being off-task 5% of the workday, and being absent one day per month." *See id.* at 15. Ninth Circuit authority supports the conclusion that the ALJ's RFC assessment reasonably accommodated Dr. Belen's moderate limitation findings. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017) (finding "no obvious inconsistency" between the two physicians' opinions that plaintiff was "moderately limited" in his interactions with coworkers and the ALJ's RFC finding that limited plaintiff to "simple routine tasks in a non-public setting, with occasional interactions with coworkers"); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (ALJ's limitation to "simple, routine, repetitive" work sufficiently accommodated medical opinion evidence that plaintiff had "moderate" limitation in pace and "other mental limitations regarding attention, concentration, and adaptation"); *Terrey v. Berryhill*, 696 Fed. App'x 831, 833 (9th

9

Cir. 2017) (ALJ's RFC finding for "simple and unskilled work" that "must be checked by a supervisor two to three times a day" adequately captured doctor's opinion that plaintiff had "moderately severe" limitations in understanding, carrying out, and remembering instructions, responding to customary work pressures, and performing complex tasks, and "mild" limitations in relating to others, and performing simple and varied tasks); *Hughes v. Colvin*, 599 Fed. App'x 765, 766 (9th Cir. 2015) (ALJ's RFC assessment accounted for moderate difficulties in social functioning, concentration, and persistence by restricting plaintiff to simple, routine, repetitive tasks in job where she could work independently, with no more than occasional public interaction).

Plaintiff contends the ALJ's RFC assessment that plaintiff would be "off-task 5% of the workday" is inconsistent with Dr. Belen's opinion because a "moderate limitation" represents an impairment that affects work up to one third of the time. *See* P. Mem. at 8-9. But contrary to plaintiff's argument, the Social Security regulations do not provide a standard definition of the term "moderate." *See Holland v. Colvin*, 2016 WL 928665, at *3 (C.D. Cal. Mar. 4, 2016); *Serna v. Astrue*, 2008 WL 5179033, at *3 (C.D. Cal. Dec. 9, 2008) (citing 20 C.F.R. § 416.902a(c)(4)); *Stenson v. Astrue*, 2012 WL 1154400, at *8 (S.D. Cal. Mar. 15, 2012). Courts have held that a plaintiff "found to have a moderate limitation in her ability to respond appropriately to work pressures in a usual work setting would still be able to satisfactorily function in this area." *Serna*, 2008 WL 5179033 at *3 (citing *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006)); *see also Arriola v. Astrue*, 2008 WL 4926961, at *4 (C.D. Cal. Nov. 14, 2008) (noting that "moderate" is "more than a slight limitation in this area but the individual is still able to function satisfactorily"). Moreover, courts in the Ninth Circuit have found that "[m]oderate mental functional limitations — specifically limitations in social functioning and adaptation — are not per se disabling, nor do they preclude the

performance of jobs that involve simple, repetitive tasks." *McLain v. Astrue*, 2011 WL 2174895, at *6 (C.D. Cal. June 3, 2011); *Koehler v. Astrue*, 283 Fed. App'x 443, 445 (9th Cir. 2008) (holding that ALJ's finding that plaintiff lacked a severe mental impairment was proper despite "diagnosis of a 'moderate' degree in one's ability to respond to changes in the workplace setting"). As such, the ALJ's finding that plaintiff could perform light work except that she is limited to "simple and routine instructions, occasional contact with the public, occasional changes in workplace setting, being off-task 5% of the workday, and being absent one day per month" is consistent with Dr. Belen's moderate mental limitation findings.

Because the ALJ properly considered the moderate mental limitations identified by Dr. Belen in formulating plaintiff's RFC and substantial evidence supports the ALJ's findings, the ALJ did not err in considering Dr. Belen's opinion.

**B.** **The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Testimony**

Plaintiff also argues the ALJ erred by rejecting plaintiff's subjective symptom testimony on the grounds that it was inconsistent with the objective medical evidence and plaintiff received routine and conservative treatment. *See* P. Mem. at 13-16. Plaintiff argues these reasons do not amount to clear and convincing reasons for discounting her testimony. *See id.*

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p. To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d

11

341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *accord Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's testimony, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti* v. Astrue, 533 F.3d at 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 18. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. The ALJ discounted plaintiff's testimony here because: (1) plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record; (2) she received routine and conservative treatment; (3) she did not comply with her prescribed treatment, which caused her diabetes and related symptoms to worsen; (4) she was able to work in the past despite having the same symptoms and diagnoses; and (5) she was capable of performing activities of daily living. *Id.* at 16, 18.

The ALJ's first reason for discounting plaintiff's testimony was that it was not entirely consistent with the objective medical evidence. *Id.* The ALJ discussed the opinions of all the treating, examining, and State agency physicians, as well as plaintiff's testimony, and found that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely supported by the objective medical evidence and other evidence in the record. *Id.* at 16-18.

Plaintiff does not point to any flaw in the ALJ's analysis, except to note that objective medical evidence is not the only evidence that may establish the degree of impairment. While plaintiff is correct that lack of objective medical evidence cannot be the sole basis for rejecting plaintiff's testimony, the ALJ here properly considered this factor in conjunction with others in rejecting her subjective testimony. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence is a factor the ALJ can consider in credibility analysis).

The ALJ's second reason for rejecting plaintiff's testimony was that she received routine and conservative treatment that is inconsistent with her alleged limitations. *Id.* at 18. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Here, the ALJ found that although plaintiff noted a long list of physical impairments, her diabetes and related symptoms are treated with routine care that involves medications and diet changes. *See* AR at 16, 18, 488, 518, 714, 733-34; *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for [disability] benefits."). In addition, the ALJ noted that plaintiff failed to comply with her prescribed treatment, which caused her diabetes and related symptoms to worsen. *See* AR at 18, 714, 733-34; *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("the individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment prescribed and there are no good reasons for this failure"). Prior to plaintiff's non-compliance with her prescribed treatment, her diabetes and related symptoms appeared to be controlled with diet, insulin, checking blood sugar, and medication. *See id.* at 488, 490-92. Plaintiff does not explain why she failed to comply with her prescribed treatment, nor does she challenge the ALJ's consideration of this factor. As such, plaintiff's

routine and conservative treatment with respect to her physical impairments and her failure to comply with her prescribed treatment are clear and convincing reasons for the ALJ to reject plaintiff's testimony.

With respect to plaintiff's mental impairments, the ALJ also found that plaintiff was treated with routine and conservative treatment. *See id.* at 16-18. In support of this finding, the ALJ noted that plaintiff was prescribed with Prozac by her family doctor, and that her condition is controlled with such routine care. *Id.* at 16-17, 473. But contrary to the ALJ's finding, Dr. Belen stated that plaintiff was "responding poorly" to the current treatment by her family doctor, who prescribed her with Prozac. *See id.* at 475. Although defendant correctly points out that non-conservative treatment options existed since Dr. Belen recommended that plaintiff be seen by a psychiatrist, increase her anti-depressant medication, and attend counseling more than twice a month (*id.* at 475), plaintiff testified during the hearing that her insurance did not cover therapy. *See id.* at 53. Thus, the alleged routine care plaintiff received for her mental impairments and her failure to pursue the non-conservative treatment options recommended by Dr. Belen are not clear and convincing reasons to discount her testimony. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (finding plaintiff's failure to seek treatment because of an inability to afford it is not a clear and convincing reason to reject plaintiff's testimony).

The ALJ also considered plaintiff's ability to work in the past despite having the same symptoms and diagnoses since the late 1990s in rejecting her subjective testimony. *See* AR at 18. Specifically, the ALJ noted that despite plaintiff's long history of mental impairments, including being hospitalized as a child and in the late 1990s for mental symptoms and suicidal attempts, she has not received any emergency treatment since then and she was able to work until 2013. *Id.* at 13, 16, 18, 473. The ALJ thus reasonably interpreted the fact that her mental impairments

14

did not prevent plaintiff from working until 2013 as suggesting that it would not do so now. *See Terrey v. Berryhill*, 696 F. App'x 831, 833 (9th Cir. 2017) (finding that the ALJ permissibly discounted plaintiff's subjective testimony on the ground that his alleged disabling impairments existed at the same time he worked at his previous job). As such, plaintiff's ability to work in the past despite having the same symptoms and diagnoses is a clear and convincing reason for rejecting plaintiff's testimony.

Finally, although plaintiff argues that the ALJ did not consider her daily activities as a reason to reject her testimony (*see* P. Mem. at 15), the hearing decision suggests otherwise. The ALJ considered plaintiff's ability to "complete a range of daily activities," including dressing, bathing, eating, toileting, household chores, shopping, cooking, and managing her own money. AR at 16, 474. The ALJ also indicated that while plaintiff did report some difficulty going to places by herself, she had "fine" relationships with her family, showed good eye contact and rapport with doctors, and was deemed intellectually and psychologically capable of performing activities of daily living. *Id.* Thus, the ALJ reasonably considered plaintiff's ability to perform daily activities in finding that plaintiff's subjective testimony was inconsistent with the alleged severity of her symptoms. *See Stubbs-Danielson*, 539 F.3d at 1175 (ALJ properly rejected plaintiff's testimony where the record reflected that plaintiff engaged in normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances).

Accordingly, the inconsistency between plaintiff's testimony and objective evidence, in conjunction with the routine and conservative treatment for her physical impairments, her non-compliance with treatment, and her ability to work in the past despite having the same symptoms, and her ability to perform a range of daily activities amount to clear and convincing reasons for the ALJ to reject her

subjective testimony.

## C. The ALJ Properly Considered the Lay Testimony from Plaintiff's Daughter

Plaintiff additionally argues the ALJ failed to properly consider plaintiff's daughter's testimony. *See* P. Mem. at 16-17.

"[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see also* 20 C.F.R.§§ 404.1513(d)(4), 416.913(d)(4) (explaining that the Commissioner will consider all evidence from "non-medical sources," including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy"). The ALJ may only discount the testimony of a lay witness if he provides specific "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and give reasons germane to each witness for doing so.").

Victoria Jurado, who is listed as plaintiff's daughter, completed a Third Party Function Report on November 25, 2015. AR at 390-98. In the Third Party Report, Ms. Jurado stated that plaintiff is always tired, she needs reminders to brush her teeth, shower, and take her pills, and can only make light meals. *Id.* at 391-92. Additionally, Ms. Jurado stated that plaintiff only does her laundry about twice a month, and she cannot go outside by herself, but that she goes to the store for food about once a month. *Id*. at 392-93. Ms. Jurado also stated that plaintiff's impairments have affected her hearing, seeing, memory, ability to complete tasks, concentrate, understand, follow instructions, and use her hands. *Id.* at 395.

The ALJ stated he gave limited weight to plaintiff's daughter's Third Party Function Report because, while it was "provided by someone who has observed the claimant on a regular basis, it is provided by a non-medical source and is based on the claimant's subjective complaints. Nonetheless, it has been considered." *Id.* at 17.

Because a lay witness is by definition not an acceptable medical source, the ALJ's discounting of plaintiff's daughter's testimony on the ground that she is not a medical source amounted to a wholesale rejection of all lay witness testimony and was not germane to plaintiff's daughter. *See Smolen*, 80 F.3d at 1289 (the ALJ's rejection of plaintiff's family member's testimony as biased "amounted to a wholesale dismissal of the testimony of all [the family] witnesses as a group and therefore does not qualify as a reason germane to each individual who testified"). Thus, the first reason the ALJ gave was not germane.

The second reason given by the ALJ was that the daughter's statements were based on plaintiff's subjective complaints. A review of the report reflects that many of the statements were based on the daughter's own observations, as the ALJ acknowledged in stating the report was given by someone who regularly observed plaintiff. Yet portions of the report reflect information that would have come from plaintiff herself, such as reports of plaintiff's poor sleep quality, how plaintiff feels, and certain of the statements about plaintiff's limitations. *See* AR at 391-93, 395-96. As discussed above, the ALJ properly discounted plaintiff's subjective testimony. Because the ALJ found that plaintiff's daughter's Third-Party Report was based on plaintiff's subjective complaints, this is a germane reason for the ALJ to reject it. *See Edgecomb v. Berryhill*, 741 F. App'x 390, 392 (9th Cir. 2018) ("the ALJ gave germane reasons for affording little weight to the opinion of [the] nurse practitioner" because her "opinion was based on [claimant's] self reporting, which the ALJ determined was not fully credible"). Although not all of the report

was based on these subjective complaints, the ALJ did not discount the report entirely, but rather stated he had considered it and given it limited weight.

Thus, while the ALJ could not reject plaintiff's daughter's testimony on the ground that it was provided by a non-medical source, the ALJ cited a germane reason for giving only limited weight to her report given that it was in part based on plaintiff's subjective complaints, which the ALJ properly discounted.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: November 24, 2020   _____

SHERI PYM
United States Magistrate Judge